**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| CONSTANCE L. EWING | § | |
| | § | |
| V. | § | CASE NO. 4:06cv192 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

**AMENDED REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

The Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits ("DIB"). After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be REMANDED.

**HISTORY OF THE CASE**

Plaintiff protectively filed her DIB application on May 14, 2002, with an alleged disability onset date of March 1, 2002, due to fibromyalgia and arthritic damage to her spine (Tr. 97-100, 103). Plaintiff's date last insured for entitlement to DIB was June 30, 2006 (Tr. 112). The Agency denied Plaintiff's application at the initial and reconsideration levels (Tr. 25-26). Plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 39, 139). The hearing before ALJ Arthur J. Schultz was initially held on July 8, 2004, and completed on June 30, 2005, in Dallas, Texas (Tr. 39, 379, 396). On September 10, 2005, ALJ Schultz issued an adverse decision concluding that Plaintiff was not disabled under the Act (Tr. 24). On May 10, 2006, the Appeals Council declined to review the case (Tr. 4). Therefore, the September 10, 2005, decision of the ALJ became the final administrative decision of the Commissioner for purposes of judicial review under 42 U.S.C.

1

§ 405(g). *See* 20 C.F.R. § 404.981 (2006) (Appeals Council denial of review).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After considering the record, the ALJ made the prescribed sequential evaluation. The ALJ specifically found that Plaintiff's allegations concerning her limitations were not entirely credible; she had the residual functional capacity for a range of light work; her past relevant work as a grocery checker did not require the performance of work-related activities precluded by her RFC; and her medically determined fibromyalgia, obesity, hypertension, and major depression did not prevent her from performing past relevant work

## STANDARD OF REVIEW

This Court does not function as a "second administrative proceeding." It not the province of this Court to substitute its opinions for that of the ALJ. Judicial review of the Commissioner's final decision of no disability is limited to two inquiries: whether the decision is supported by substantial evidence in the record, and whether the proper legal standards were used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401. The Court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court is not to substitute its judgment for that of the Commissioner, and reversal is

permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below.

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (1987). First, a claimant who, at the time of his disability claim, is engaged in substantial gainful employment, is not disabled. 20 C.F.R. § 404.1520(b) (1987). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c) (1987). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1987). 20 C.F.R. § 404.1520(d) (1987). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he or she is capable of performing his past work. 20 C.F.R. § 404.1520(e) (1987). Finally, a claimant who cannot return to her past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1529(f) (1987); 42 U.S.C. § 1382(a). In this case, the determination was made at the fourth step.

## ANALYSIS

**Failure to mention headaches**

Ewing first argues that the ALJ failed to evaluate her headaches in conducting his inquiry and that this omission justifies reversal. The records from Dr. Phipps indicate that she saw him several times and was diagnosed with chronic headaches. The Court notes that nowhere in Ewing's testimony before the ALJ are "migraine or headache" mentioned. Ms. Ewing was represented by experienced and competent counsel, and both the ALJ and counsel had the opportunity to examine Ms. Ewing. In fact, the ALJ specifically asks her if there is anything else she wants to express and her answer is "no." Ewing's counsel asserts that it is the duty of the ALJ to parse the records and determine what conditions are at issue.

The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision. *See generally Hammond v. Barnhart,* 124 Fed. Appx. 847 (5th Cir. 2005). That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994) (rejecting as unnecessary rule requiring ALJ to specifically articulate evidence that supported decision and discuss evidence that was rejected). The harmless error doctrine applies in Social Security disability cases. *See Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir. 1998). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Id.* (quoting *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988)).

Here, the ALJ specifically referenced Dr. Phipps's records. Plaintiff had ample opportunity to present this particular condition for consideration to her physicians but no mention is made in any

records (Tr. 103, 105,106108, 116, 120, 123, 124, 133, (190 205 , 209, 253-migraine noted as stable). Most of her visits to Dr. Phipps list chief complaints, and headaches are frequently not listed; rather conditions such as pain, swelling or edema are noted. Many of her visits are for sinus pain and congestion. The Court notes that some records do reference complaints of headaches. However, the ALJ specifically references the records he has reviewed from various physicians or health care providers.

The Court also notes that the interrogatories submitted by Mr. Weisbrod to Dr. Fletcher are specifically mentioned in the ALJ's opinion. Those interrogatories mention that Ms. Ewing is suffering from headaches and request how that condition along with other conditions will affect her. The Court finds that, on this issue, Ms. Ewing's "substantial rights" have not been affected.

**The ALJ's Failure to Order a Functional Capacity Examination**

Plaintiff argues that the ALJ should have ordered a FCE in light of the fact that the ME stated it was impossible for him to assess the exertional consequences of Ewing's fibromyalgia. The ALJ's decision not to order a consultative examination is discretionary, and the ALJ in this case had sufficient evidentiary bases for rendering the determination without such an examination. *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir. 1987) ("The decision to require such an examination is discretionary.... [T]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision."). An ALJ can, in his discretion, order a consultative examination but is not required to do so unless the medical record reveals that such an exam is necessary for the ALJ to reach a determination regarding disability. *Anderson v. Sullivan,* 887 F.2d 630, 634 (5th Cir. 1989).

Here, the ALJ had the State consultative exam as well as the Ewing's medical records. He also heard Ewing's testimony. The Court cannot state that the medical record was so deficient as to require the ALJ to obtain a functional capacity examination. Ewing's chief complaint at her last job was not lifting but using a ladder to retrieve medicine in the pharmacy. The ALJ's hypothetical assumes she can never climb ladders. As Ewing points out, the ALJ had the benefit of Dr. Alang's opinion on how Ewing's condition affected her. The ALJ also did a critical assessment of Ewing's credibility and found that many of her subjective complaints were not substantiated by the records before him.

**The ALJ Failed To Properly Assess Dr. Alang's Medical Conclusions**

Ewing states that the ALJ is not free to play doctor and should not have discounted Dr. Alang's medical conclusions by failing to accord "great weight" to her reports. In any event, Ewing argues that the ALJ was to required to ascribe "controlling weight" to her opinions when confronted with a conflict in the evidence. Failing to ascribe the appropriate weight to the treating physician's opinions at least required the ALJ to perform an appropriate analysis in arriving at his opinion.

The opinion of the treating physician, who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120, 115 S. Ct. 1984, 131 L. Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with...other substantial evidence." *Martinez,* 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)). "The opinion of a specialist generally is accorded greater weight than that of a non-

specialist." *Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Id.* "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Id.* The treating physician's opinions are not conclusive. *See Brown,* 192 F.3d at 500. The opinions may be assigned little or no weight when good cause is shown. *Greenspan,* 38 F.3d at 237. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *See, e.g., Brown,* 192 F.3d at 500; *Greenspan,* 38 F.3d at 237; *Paul,* 29 F.3d at 211; *Newton v. Apfel,* 209 F.3d 448 (5th Cir. 2000). In *Newton,* the Court held that the ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist. *Newton,* 209 F.3d at 456.

SSA Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of:

(1) the physician's length of treatment of the claimant,

(2) the physician's frequency of examination,

(3) the nature and extent of the treatment relationship,

(4) the support of the physician's opinion afforded by the medical evidence of record,

> (5) the consistency of the opinion with the record as a whole; and
>
> (6) the specialization of the treating physician.

The regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight. *Newton,* 209 F.3d at 456.

The ALJ does not reject Alang's opinion but merely states that it is entitled to "little weight." He notes that the degree of limitation is self-reported. Although the ALJ does not do a step-by-step analysis, he does specifically mention her limitation is mostly self-reported, and is inconsistent with other records before him.

Alang's records were submitted to the ALJ. The records note that her visits are for diabetes, slip-and-fall with resultant back pain, prescription refills, sinus pain, fall, headache, cough, skin rashes, and general checkups. In all, the records submitted for the two-year period, there is only one specific visit for fibromyalgia. Most records indicate she is in no acute distress.

The Court cannot say that Ewing has been prejudiced by the ALJ's failure to proceed step by step in his analysis. The records submitted do not undermine the ALJ's analysis and, if anything, support it. The Court finds that the ALJ had sufficient good cause to discount Alang's fill-in-the-blank questionnaire. The ALJ also had records which indicated normal nerve conduction studies, normal M.R.I., and a muscle biopsy, which for most purposes was unremarkable. Laboratory studies for the most part are also unremarkable.

**Plaintiff Argues that the ALJ failed to follow Fifth Circuit Precedent on RFC**

Plaintiff argues that the ALJ failed to follow Fifth Circuit precedent in *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) in assessing her RFC to work 8 hours a day, for 5 days a week, or an equivalent work schedule. In *Myers*, the Court held that the ALJ failed to state whether the claimant could perform job demands on a regular and continuing basis. The Court also found that more importantly the ALJ failed to resolve the inconsistencies in the record. *Myers*, 238 F.3d at 621.

Here, the ALJ has resolved the inconsistencies in the record and gives his reasons for doing so. Dr. Fletcher's responses to interrogatories indicate that Ewing could not work at a sustained pace. However, the ALJ discounts this assessment since it is based on Ewing's self-reported limitations. He specifically indicates his reason for not accepting Fletcher's answers to the interrogatories submitted by counsel. By implication, he has found that Ewing can work on a work schedule which contemplates an 8-hour day, 5 days a week.

The ALJ's second hypothetical to the VE assumes that there would be significant interruptions in her work week. The VE responded that on the basis of the hypothetical, she could not perform her past work. In this case, for the reasons stated by the ALJ, he discounted the evidence supporting the second hypothetical. The Court finds that, although he did not explicitly hold that Ewing could work an 8-hour day on a regular and continuous basis, he certainly considered it in his findings and did not violate the spirit of the Fifth Circuit's holding in *Myers*.

**Plaintiff's Argument that the ALJ step three determination is deficient**

Ewing argues that the ALJ's determination that her condition or combination of conditions did not meet or medically equal a listed impairment is merely conclusionary and provides no meaningful analysis of how the ALJ arrived at his decision. In this case, the ALJ solicited testimony

from the medical examiner as to whether Ewing's conditions or combination of conditions resulted in a severe impairment. At the third step, the medical severity of the claimant's impairment(s) is also considered. If he has an impairment(s) that meets or equals one of the listings in Appendix 1 to subpart P of part 404 of the chapter and meets the duration requirement, he will be found disabled. Ewing cites the Court to *Audler v. Astrue, 501 F.3d 446 (5th Cir. 2007)* as authority for her contention that the ALJ is required to articulate the reasons supporting his finding under Step Three.

Ewing contends that fibromyalgia can be evaluated under a variety of listings even though it is not specifically mentioned. Ewing provides two specific examples. However, Ewing fails to demonstrate that any of her conditions would meet these conditions. Since the burden is on the claimant at Step Three, then experienced counsel should articulate how the medically demonstrated impairments satisfy objectively diagnosed impairments for the duration prescribed in the listing. The Court notes that as to Listing 1.02, claimant's description of walking without assistance appears to remove this listing from consideration. To require the ALJ to articulate why each impairment does not equal or meet a listing is counter productive to the rules and regulations established by the Agency. However, in light of *Audler,* the Court remands this case for the ALJ to articulate his findings at Step Three as urged by Ewing.

## **RECOMMENDATION**

Pursuant to the foregoing, the Court RECOMMENDS that the decision of the Administrative Law Judge be Remanded for a determination at Step Three as to whether the claimant is disabled and to follow the Fifth Circuit's reasoning in *Audler*.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days shall bar an aggrieved party from attacking the factual findings on

appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 (1985); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc).

**SIGNED this 7th day of March, 2008.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE